In re: Ann M. VENEMAN, Secretary of Agriculture, Petitioner.

No. 02–5021.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 2002.

Decided Oct. 29, 2002.

Charles W. Scarborough, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs were Roscoe C. Howard, Jr., U.S. Attorney, and Robert M. Loeb, Attorney, U.S. Department of Justice.

Joseph M. Sellers argued the cause for respondents. With him on the brief were Suzette M. Malveaux, Alexander Pires, Jr., David Frantz, and Phillip L. Fraas.

Michael L. Foreman, Elaine R. Jones, Norman J. Chachkin, Paul M. Smith, Ian Heath Gershengorn, and John Dossett were on the brief for amici curiae in support of respondents.

Before: TATEL and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Rule 23(b)(2) of the Federal Rules of Civil Procedure permits certification of class actions not "exclusively or predominantly [for] money damages." This petition for interlocutory review presents the following question: In a case involving requests for both monetary and equitable relief, may a district court certify a Rule 23(b)(2) class as to equitable relief only without first determining whether, looking at the complaint as a whole, plaintiffs' monetary claims predominate over their equitable claims? Although this issue is both unsettled and fundamental—factors that may justify interlocutory review pur-

suant to Rule 23(f)—we nevertheless deny the petition because the critical questions required to resolve it are entirely unbriefed and because we are satisfied that the issue will not escape appellate review.

## I.

The United States Department of Agriculture administers several farm credit and benefit programs under the direction of its Farm Service Agency ("FSA"). *See* Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.*; 7 C.F.R. § 2.42(28). Farmers seeking FSA loans or subsidies apply to local county committees made up of farmers elected by other farmers. *Pigford v. Glickman*, 206 F.3d 1212, 1214 (D.C.Cir.2000). If the county committee approves the application, the farmer receives the benefit. If the committee denies the application, the farmer may appeal to a state committee and then to a federal review board. *Pigford v. Glickman*, 182 F.R.D. 341, 343 (D.D.C.1998). Farmers believing that their applications have been denied on the basis of race can file complaints either directly with the FSA or with the Department. *Id.*

Alleging that the Department discriminated against them on the basis of race in its administration of these programs, seven Native–American farmers filed this action in the United States District Court for the District of Columbia on behalf of themselves and others similarly situated. The lawsuit followed the Department's release of a self-critical report that had been prompted by longstanding accusations of racial discrimination in the administration of agricultural programs. CIVIL RIGHTS ACTION TEAM, USDA, CIVIL RIGHTS AT THE UNITED STATES DEPARTMENT OF AGRICULTURE 2–3 (1997), *available at* http://www.usda.gov/news/civil/cr_next.htm. Noting that "discrimination in program delivery ... continues to exist to a large degree unabated," *id.* at 2, the report found signif-

icant disparities between the Department's treatment of minority and nonminority farmers, such as "lower participation and lower loan approval rates for minorities in most [agency] programs," and substantial inequalities in loan processing rates, including "disparities between nonminority loan processing and American Indian loan processing" in certain states, *id.* at 21. Since "complaints [were] processed slowly, if at all," *id.* at 25, farmers found "little relief" in the Department's complaint process, "which, if anything, often ma[de] matters worse," *id.* at 22. According to the report, Department officials did little to improve the Department's record of civil rights enforcement; indeed, "during the early and mid–1980's USDA leaders had effectively dismantled USDA's civil rights apparatus," and "numerous reorganizations" since that time had left "civil rights at USDA ... in a persistent state of chaos." *Id.* at 47 (internal quotation marks omitted). Minority farmers, the report concluded, "have lost significant amounts of land and potential farm income as a result of discrimination by [USDA] programs." *Id.* at 30.

Proceeding under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f, the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, the farmers, seeking both equitable and monetary relief, allege discrimination in the Department's handling of applications and in its failure to investigate and process their discrimination complaints. Four similar suits have been filed: An action on behalf of African–American and Latino farmers was dismissed, *Williams v. Glickman*, No. 95–1149 (D.D.C. filed June 16, 1995); another action brought by a class of African–American farmers has been settled, *see Pigford v. Veneman*, 292 F.3d 918 (D.C.Cir.2002); and actions on behalf of Latino farmers, *Garcia v. Vene-*

*man,* No. 00–2445 (D.D.C. filed Oct. 13, 2000), and female and other farmers alleging discrimination on the basis of age, sex, marital status, race, color, national origin, or religion, *Love v. Veneman,* No. 00–2502 (D.D.C. filed Oct. 19, 2000), remain pending in district court.

In a motion for judgment on the pleadings, or in the alternative for summary judgment, the Department argued (among other things) that the farmers' claims regarding its failure to process their complaints were actionable under neither the APA nor the ECOA. The district court denied the motion without prejudice, and the farmers moved to certify a class consisting of "[a]ll Native–American farmers and ranchers who believe that USDA discriminated against them on account of their race in their applications for, or USDA's administration of, USDA farm programs ... and who complained of that discrimination to the USDA."

Under the Federal Rules of Civil Procedure, a class can be certified if it meets Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequacy of representation—and if it falls into one of the three categories of class actions described in Rule 23(b). FED. R. CIV. P. 23(a), 23(b); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613–16, 117 S.Ct. 2231, 2244–46, 138 L.Ed.2d 689 (1997). Rules 23(b)(2) and (b)(3)—the two categories at issue in this case—have different requirements depending primarily on the nature of the relief sought. Rule 23(b)(2) certification is appropriate where plaintiffs seek declaratory or injunctive relief for class-wide injury. Such certification is particularly well-suited for civil rights actions where "a party is charged with discriminating unlawfully against a class." FED. R. CIV. P. 23(b)(2) advisory committee notes. According to the Advisory Committee Notes, however, (b)(2) certification is not proper where "the appropriate final relief relates exclusively or predominantly to money damages." *Id.*

In contrast to Rule 23(b)(2), class certification pursuant to Rule 23(b)(3) is appropriate even where plaintiffs seek only monetary damages so long as "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Certification pursuant to Rule 23(b)(3), however, comes with certain procedural requirements: Because members of a class seeking substantial monetary damages may have divergent interests, due process requires that putative class members receive notice and an opportunity to opt out. *See* FED. R. CIV. P. 23(c)(2); *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 165–66 (2d Cir.2001). By contrast, Rule 23(b)(2) imposes no similar requirements because a class seeking primarily equitable relief for a common injury is assumed to be a cohesive group with few conflicting interests, giving rise to a presumption that adequate representation alone provides sufficient procedural protection. *See Robinson,* 267 F.3d at 165 (noting the presumption that an adequate class representative in a (b)(2) action "will generally safeguard absent class members' interests and thereby satisfy the strictures of due process").

Seeking both equitable and monetary relief, the farmers asked the district court to certify a so-called "hybrid" class: a (b)(2) class for their equitable claims and a (b)(3) class for their monetary claims. In support of this request, the farmers relied on language in *Eubanks v. Billington,* 110 F.3d 87 (D.C.Cir.1997), which held that district courts may grant opt-out rights in (b)(2) class actions either by certifying a (b)(3) class as to claims for monetary relief

or by exercising their discretion under Rule 23(d)(5) to allow opt-outs from the (b)(2) class. *Id.* at 96. The district court, however, certified only a (b)(2) class and—central to this case—instead of determining whether plaintiffs' monetary claims predominate over their equitable claims, the district court limited the class to pursuing equitable relief, explaining that it lacked a sufficiently developed factual record to rule on the appropriate treatment of the monetary claims. *Keepseagle v. Veneman,* No. 99–3119, mem. op. at 36 (D.D.C. Dec. 12, 2001). Also, the class the district court certified—all Native–American farmers and ranchers who filed discrimination complaints with the Department between January 1, 1981, and November 24, 1999—was narrower than the one the farmers had sought. *Keepseagle v. Veneman,* mem. op. at 36.

Proceeding under FED.R.CIV.P. 23(f), which allows courts of appeals, "in their discretion," to entertain interlocutory appeals of class certification decisions, the Department now mounts two challenges to the district court's class certification decision. First, the Department claims that the farmers' complaint-processing allegations fail Rule 23(a)'s commonality and typicality requirements. Second, the Department argues that the district court lacked authority to certify a (b)(2) class without first determining whether the "appropriate final relief relates exclusively or predominately to money damages." FED. R. CIV. P. 23(b)(2) advisory committee notes.

## II.

▌ Before considering the merits of the Department's petition, we must address the farmers' argument that we lack jurisdiction because the petition was untimely. Rule 23(f) gives litigants ten days to petition the court of appeals for review of an order granting or denying class certification. In this case, the Department filed its 23(f) petition on October 12, fourteen calendar days after the district court issued its class certification order. Citing FED. R. APP. P. 26(a), which requires inclusion of all calendar days when computing filing periods, the farmers contend that the Department's petition was late.

Although we agree that the Federal Rules of Appellate Procedure govern the filing of Rule 23(f) petitions, the farmers rely on the wrong rule. Rule 5(a), which governs petitions for permission to appeal, does not refer to Rule 26(a), but instead instructs litigants to file their petitions within "the time specified by the statute or rule authorizing the appeal." In this case, the rule "authorizing the appeal" is Rule 23(f) of the Federal Rules of Civil Procedure. The civil rules have their own time-computation rule, which excludes Saturdays, Sundays, and legal holidays when "computing any period of time prescribed or allowed by [the civil] rules." FED. R. CIV. P. 6(a). Because Rule 23(f) is a rule of civil procedure, Rule 6(a) governs the timing of 23(f) petitions, as every one of our sister circuits to have considered the matter has held. *See Shin v. Cobb County Bd. of Educ.,* 248 F.3d 1061, 1065 (11th Cir. 2001); *see also In re Sumitomo Copper Litig.,* 262 F.3d 134, 137 n. 1 (2d Cir.2001); *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 142 n. 1 (4th Cir.2001); *Blair v. Equifax Check Servs., Inc.,* 181 F.3d 832, 837 (7th Cir.1999).

Under Rule 6(a), the petition was timely. Although the Department filed it fourteen calendar days after the district court issued its class certification order, those fourteen days included four weekend days, and 14 – 4 = 10.

## III.

▌ This brings us to the question of whether to exercise our discretion under Rule 23(f) to entertain the Department's

challenges to the district court's class certification order. In this circuit, interlocutory review of class certification decisions pursuant to Rule 23(f) is ordinarily appropriate in three circumstances: (1) when a "questionable" class certification decision creates a "death-knell situation" for either party; (2) when the certification decision presents "an unsettled and fundamental issue of law relating to class actions ... that is likely to evade end-of-the-case review"; and (3) when the certification decision is manifestly erroneous. *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C.Cir.2002). Even if a case falls into none of these categories, we will grant 23(f) interlocutory review in "special circumstances," though we have cautioned that such review should be "granted rarely." *Id.* at 105–06.

■ If the Department had challenged only the district court's application of Rule 23(a), we would have no trouble rejecting the petition, for it falls into none of the *Lorazepam* categories. Beginning with the first category, we do not see how the certification of a class limited to injunctive and declaratory relief can create the sort of high-stakes situation that puts "substantial pressure on the defendant to settle independent of the merits of the plaintiffs' claims." *Id.* at 102 (citing *Blair*, 181 F.3d 832 at 834). The Department insists that the district court's limitation of the class to equitable relief is "irrelevant" because "this case is, at bottom, about compensatory relief for past wrongs," creating a "threat of 'hydraulic' pressure to settle." Petitioner's Reply Br. at 12. As this case now stands, however, the farmers may not seek compensatory relief, so the Department faces no possibility of a massive damage judgment. A "death knell" will come, if at all, when and if the district court authorizes the class to proceed with its monetary claims.

Nor do we see anything either novel or manifestly erroneous (the second and third *Lorazepam* categories) about the district court's conclusion that the farmers' allegations concerning the Department's "failure to properly process, account for, and/or investigate discrimination complaints," which "affected each class member," satisfy Rule 23(a)'s commonality and typicality requirements. *Keepseagle*, mem. op. at 19–20. According to the Department, the farmers' complaint-processing allegations are a sham: the farmers, it says, designed those allegations "solely to manufacture the illusion of commonality" for class-certification purposes and "have no intention of actually litigating this claim." Petitioner's Opening Br. at 29–30. As the district court observed, however, nothing so far bears out the Department's dire predictions, *Keepseagle*, mem. op. at 22 n.8, and we think that the district court is in a far better position than we to evaluate claims of this sort. The Department's concern that the farmers will one day abandon their complaint-processing claim is too speculative to justify Rule 23(f) review.

■ In support of its challenge to the district court's 23(a) findings, the Department also argues that the farmers' complaint-processing claim is actionable under neither the ECOA nor the APA. But this argument, which the Department also made in its unsuccessful motion for judgment on the pleadings, has no bearing on the question of class certification. As the Supreme Court has long held, courts may not examine whether "plaintiffs have stated a cause of action or will prevail on the merits" in order to determine whether class certification is appropriate. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (internal quotation marks and citation omitted). To entertain the Department's claims concerning ECOA and APA cover-

age, now dressed up as challenges to class certification, would "inappropriately mix the issue of class certification with the merits." *Lorazepam*, 289 F.3d at 107.

 The Department's challenge to the district court's application of Rule 23(b) presents a closer question. According to the Department, the district court lacked authority to certify only some of the plaintiffs' claims while leaving the rest "in limbo—not dismissed, but merely deferred." Petitioner's Reply Br. at 27. Unlike the other questions the Department raises in its petition, the question of whether district courts may certify a (b)(2) class solely for purposes of equitable relief without first determining if plaintiffs' claims for monetary relief predominate over their equitable claims is both unsettled—we know of no circuit that has addressed that issue—and fundamental. It is not, however, likely to evade end-of-the-case review. And while we might nonetheless regard the case as presenting "special circumstances," *Lorazepam*, 289 F.3d at 106, we think the question inappropriate for 23(f) review because the parties have failed to raise the issues critical to its resolution.

Rule 23(c)(4)(A), which authorizes certification of class actions "with respect to particular issues," would at first glance seem to provide authority for the district court's order in this case. The issue, however, is not so clear. To begin with, Department counsel pointed out at oral argument that the Advisory Committee Notes to Rule 23(b)(2) provide that certification "does not extend to *cases* in which the appropriate final relief relates exclusively or predominantly to money damages." FED.R.CIV.P. 23(b)(2) advisory committee notes (emphasis added). If by using the word "cases," the Advisory Committee meant to refer to the entire set of issues that a complaint raises, then partial certification under 23(c)(4)(A) could occur only

after the district court makes the (b)(2) predominance determination. But if, as counsel for the farmers contended at oral argument, the phrase "appropriate final relief," not the word "cases," functions as the operative portion of the Advisory Committee Notes, then where the district court limits the class to seeking injunctive and declaratory relief (as the district court did here), the appropriate final relief in the "case" is equitable, not monetary.

More important, the introduction to subsection (c)(4) provides that certification "with respect to particular issues" may be ordered only "where appropriate." As the court observed at oral argument, whether partial certification is "appropriate" turns at least in part on its effect on two concerns surrounding Rule 23 class actions: first, how class certification affects the due process rights of absent class members to have their own day in court, and second, whether parties are bound to the judgment. As to the first point, the Supreme Court established in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), that (1) before a court can bind absent class members "concerning claims wholly or predominantly for money damages," due process requires that they receive adequate notice and an opportunity to opt out of the action, *id.* at 811–13, 105 S.Ct. at 2974–75, and (2) the defendant in such an action has a right ("standing") to demand that adequate notice be given to class members, so as to avoid a situation where the defendant would be bound by a loss yet class members would not be bound by its win, *id.* at 804–06, 105 S.Ct. at 2970–72. To complicate matters further, the Supreme Court has expressly left open the question of whether a judgment in a no-opt-out class action (like the one the district court certified here) can ever preclude absent class members from bringing their own individual lawsuits for monetary damages. *Ticor*

*Title Ins. Co. v. Brown,* 511 U.S. 117, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) (per curiam) (raising, without deciding, the question of whether due process forbids enforcing a class-action judgment against an absent plaintiff who wishes to bring her own individual lawsuit for money damages, where the class was properly certified as a no-opt-out class action). Second, the constitutional concerns raised in *Shutts* and *Ticor* may also implicate the concerns underlying Rule 23. The drafters of the 1966 amendments, which gave rise to the rule as we know it today, were concerned with the binding effect of class actions and the due process protections required for parties to be bound. FED. R. CIV. P. 23 advisory committee notes (noting the need to "assure procedural fairness, particularly giving notice to members of the class, which may in turn be related in some instances to the extension of the judgment to the class"). They drafted the rule to clarify that "all class actions maintained to the end as such will result in judgments including those whom the court finds to be members of the class, whether or not the judgment is favorable to the class." *Id.*

Because of the importance of these issues to the interpretation of Rule 23 and because their implications for this case are entirely unbriefed, we think it best to decline to exercise our Rule 23(f) discretion to consider the Department's arguments at this time. Following full briefing in the district court and any revised order issued by that court, the Department remains free to seek appellate review, either in another 23(f) petition or otherwise.

The Department's petition is denied.

*So ordered.*