Guadalupe L. GARCIA, et al., Plaintiffs,

v.

Ann V. VENEMAN, Secretary, United States Department of Agriculture, Defendant.

CIV.A. No. 00–2445(JR).

United States District Court, District of Columbia.

Dec. 2, 2002.

Alexander J. Pires, Jr., Conlon, Frantz, Phelan & Pires, LLP, Phillip L. Fraas, Alan M. Wiseman, Stephen S. Hill, Howrey Simon Arnold & White, LLP, Washington, DC, for Plaintiffs.

Lisa A. Olson, Jean Lin, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, for Defendant.

## MEMORANDUM

ROBERTSON, District Judge.

Plaintiffs are ten Hispanic farmers who complain of discrimination in the administration of U.S. Department of Agriculture (USDA) loan and disaster benefit programs. The named plaintiffs also sue on behalf of others similarly situated, including 92 individuals named but not described in their second amended complaint. Before the Court is plaintiffs' motion for class certification. The motion has been extensively briefed, but plaintiffs have yet to establish that there are questions of law or fact common to the class or that such questions predominate over any questions affecting only individual members. The motion must therefore be denied.

### Background

This is one of a number of suits filed as class actions by minority and women farmers in the wake of reports documenting discriminatory practices in local USDA offices and the dismantling of the USDA's civil rights enforcement program in the early 1980s. In 1998, concerned that farmers had relied to their detriment upon USDA's (inoperative) internal mechanisms to investigate their discrimination complaints, Congress extended the statute of limitations for filing complaints under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, until October 21, 2000, to allow farmers who had filed administrative complaints concerning USDA discrimination between 1981 and 1996 to bring suit in U.S. District Court. *See Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999,* Pub.L. No. 105–277, Div. A § 101(a), § 741, 112 Stat. 2681 (Oct. 21, 1998) (codified at 7 U.S.C. § 2279 Notes). A number of class actions were filed just before the end of the extended period of limitations. USDA has settled a class action filed on behalf of African American farmers, *Pigford v. Glickman,* 185 F.R.D. 82 (D.D.C.1999), *aff'd,* 206 F.3d 1212 (D.C.Cir.2000). This action by Hispanic farmers, however, as well as suits by Native American farmers, *Keepseagle v. Veneman,* Civ. No. 99–3119, and female farmers, *Love v. Veneman,* Civ. No. 00–2502, continue in litigation.

The *Garcia* plaintiffs allege that, from January 1, 1981, to the present, the Farmers Home Administration and its successor, the Farm Service Agency, discriminated against Hispanic farmers and ranchers in making operating loans, farm ownership loans, and emergency loans, and in awarding disaster benefits. They also allege that the USDA acted unlawfully in failing to investigate and resolve the discrimination complaints they filed.

The Farm Service Agency (FSA) administers various farm loan and subsidy programs. FSA is the product of the 1994 merger of the Farmers Home Administration (FmHA) (which directly made and guaranteed loans to farmers) and the Agricultural Stabilization and Conservation Service (ASCS) (which provided such services to farmers under commodity, price support, CRP, disaster payment programs, and related services to stabilize farm income and prices, and to assist in the conservation of land). The individual farmer's point of contact with FSA, and with FmHA and ASCS before it, was at the county office level. County committees, comprised of local farmers, reviewed and decided whether or not to approve loan requests.

### Procedural Background

This suit was filed on October 13, 2000, eight days before the expiration of the extended statute of limitations. It was assigned to Judge Louis F. Oberdorfer, transferred to Judge Royce C. Lamberth, and transferred again, on February 1, 2002, to me. On March 20, 2002, I ruled on defendant's motion to dismiss, holding (1) that the *Garcia* plaintiffs were entitled to bring Equal Credit Opportunity Act (ECOA) claims for discrimination in lending transactions without administrative exhaustion; (2) that at least some of the named plaintiffs' lending claims had been filed within the extended limitations period; and (3) that plaintiffs' allegations of failure to investigate civil rights complaints did not state claims under ECOA or the Administrative Procedure Act.

The motion now before the Court seeks certification of a class defined as:

All Hispanic farmers and ranchers who farmed or ranched or attempted to do so and who were discriminated against on the basis of national origin or ethnicity in obtaining loans, including the servicing and continuation of loans, or in participating in disaster benefit programs administered in the United States Department of Agriculture, during the period from January 1, 1981 through December 31, 1996, and timely complained about such treatment, or who experienced such discrimination from the period of October 13, 1998 through the present.

## Analysis

### Standards for class certification

Proponents of a class action must first satisfy the prerequisites of Fed.R.Civ.P. 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative party will fairly and adequately protect the interests of the class.

If those requirements of numerosity, commonality, typicality, and adequacy of representation are met, the class action must also fit one of three subsections of Rule 23(b), the second and third of which are pertinent to this case:

> An action may be maintained as a class action if . . . (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b).

■ The proponents of a class action have the burden of proof as to each of Rule 23's requirements. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n. 9 (D.C.Cir. 1984). If necessary, in deciding whether movants have met their burden, the Court may "probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### Rule 23(a) Analysis

#### Numerosity and Adequacy of Representation

■ Plaintiffs' showing of numerosity and adequacy of representation is not seriously contested. The Second Amended Complaint names 98 plaintiffs; counsel represent that 179 more Hispanic farmers have signed retainer agreements; and plaintiffs estimate that their class could reach 20,000 people. Whether 20,000 is a reasonable estimate or not, 277 plaintiffs is easily a high enough number to satisfy the numerosity requirement. *See, e.g., In re PEPCO Employment Litig.*, Civ. No. 86–0603, 1992 WL 442759, at *4 (D.D.C. Dec. 4, 1992) ("As a general rule . . . a proposed class of at least 40 members will satisfy this requirement").

As for adequacy of representation, the qualifications of plaintiffs' counsel are conceded. Opposition at 28. Defendant does suggest that the facts underlying the claims of the class representatives are not typical so that a "conflict of interest" might arise. That conflict was not further described, *see* Opposition at 27–28, but resolution of the issue is unnecessary to the disposition of this motion.

#### Commonality and Typicality [1]

■ "[T]here is more to a showing of commonality than a demonstration that class

---

1. In class certification analyses generally, and certainly in this one, the "commonality and typicality requirements tend to merge." *Falcon*, 457

U.S. at 158 n. 13, 102 S.Ct. 2364; *Wagner v. Taylor*, 836 F.2d 578, 590 n. 77 (D.C.Cir.1987). The following analysis, written in terms of com-

plaintiffs suffered discrimination on the basis of membership in a particular group....plaintiffs must make a *significant showing* to permit the court to infer that members of the class suffered from a common policy of discrimination that pervaded all of the employer's challenged employment decisions." *Hartman v. Duffey*, 19 F.3d 1459, 1472 (D.C.Cir.1994) (emphasis added). Plaintiffs have failed to make that "significant showing" in this case.

■■■■ The commonality requirement is critical to a Rule 23(a) determination. In this case, plaintiffs make two central assertions to support their commonality claim: 1) that all of the putative class members were injured by a systemic USDA failure to investigate discrimination complaints made by Hispanic farmers who applied for loans or disaster relief benefits; and 2) that USDA loan and benefit programs were controlled by "local groups of white men who exercised unfettered discretion in applying highly subjective standards to discriminate against Hispanic and other minority farmers and ranchers." Plaintiffs' Supplemental Memorandum in Support of their Motion for Class Certification ("Supplemental Memorandum") at 34. On the basis of those two assertions, plus statistical evidence showing that Hispanic farmers have received disproportionately fewer USDA loans than white farmers, plaintiffs argue that they have sustained their burden of establishing the commonality and typicality elements that are crucial to class certification.

[7, 8] The first of those two assertions—as to the USDA's failure to investigate discrimination complaints—cannot serve as the common issue of fact necessary to a Rule 23(a) determination, after my ruling on March 20, 2002, that plaintiffs' allegations of failure to investigate civil rights complaints did not state a claim under the Equal Credit Opportunity Act or the Administrative Procedure Act[2]. What remains to establish commonality, then, is the allegation of a subjective decision-making process with discriminatory results.

Before the Supreme Court rejected the "across-the-board" rule that many courts had been using to certify class actions in employment discrimination cases, *see Falcon*, 457 U.S. at 157–58, 102 S.Ct. 2364, such a premise may well have been sufficient for class certification. In *Falcon*, the Court observed that:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim.

---

monality, applies fully to the typicality element as well.

**2.** That ruling separates this case from *Pigford v. Glickman*, 182 F.R.D. 341, 348 (D.D.C.1998) and *Keepseagle v. Veneman*, Civ. No. 99–03119, Memorandum Opinion and Order at 19–20 (D.D.C. Dec. 11, 2001), in which Judges Paul L. Friedman and Emmet G. Sullivan based their class certification decisions at least partly on common issues of law and fact arising from USDA's failure to process and investigate discrimination complaints.

Consideration of the merits of plaintiffs' case is generally inappropriate at the class certification stage, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), *and see In re Veneman*, 309 F.3d 789, 793–95 (D.C.Cir.2002) (where the Court of Appeals re-

cently waved off the government's argument that the *Keepseagle* plaintiffs have no viable ECOA claim by stating that the argument has "no bearing on the question of class certification"). A court may certainly decide dispositive motions prior to determining whether the case can be maintained as a class action, however. *See Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C.Cir.2001); *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir.2000); *Cowen v. Bank United of Tex.*, 70 F.3d 937, 941 (7th Cir.1995); *Wright v. Schock*, 742 F.2d 541, 543–44 (9th Cir.1984). Once the court disposes of a claim, the court need not consider the disposed-of claim as a basis for class certification. *See Thompson v. County of Medina, Ohio*, 29 F.3d 238, 241 (6th Cir.1994) ("[W]e find that the district court did not abuse its discretion in refusing to certify a class as to the issues disposed of on summary judgment").

*Falcon,* 457 U.S. at 157–58, 102 S.Ct. 2364 (footnote omitted). In a footnote to that opinion, however, the Court speculated that "[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, *such as through entirely subjective decision-making processes.*" *Id.* at 159 n. 15, 102 S.Ct. 2364 (emphasis added); *see Wagner v. Taylor,* 836 F.2d 578, 589 (D.C.Cir.1987).

Plaintiffs rely heavily on *Falcon's* footnote 15. They argue that the very subjectivity of the USDA's county committee decision-making process, when considered with the statistical results of that process, is enough of a showing to support the certification of a class of plaintiffs making both disparate treatment and disparate impact claims[3].

The first, and most obvious, problem with this argument is its characterization of the decision-making process used in connection with USDA loan and benefit applications as "highly subjective." *Falcon's* note 15 suggests that an "entirely subjective" process might "conceivably" justify class certification. *Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. 2364. Slavish adherence to the word "entirely" would be unwise, but where, as here, a number of objective factors guide the decision-making process, the proposed class fits less neatly into the *Falcon* exception. *See Vuyanich v. Republic Nat'l Bank of Dallas,* 723 F.2d 1195, 1199–200 (5th Cir.1984) ("The district court's finding that the Bank relied on two objective inputs—education and experi-

ence—in its necessarily subjective hiring process…precludes reliance on this 'general policy of discrimination' exception"); *Webb v. Merck & Co.,* 206 F.R.D. 399, 407 (E.D.Pa. 2002) ("Since defendant's decision-making processes with regard to promotion and compensation are at least in part objective…plaintiffs cannot establish that defendants utilized a decision-making process which was *entirely* subjective for purposes of satisfying Rule 23(a)'s commonality and typicality requirements"); *Lott v. Westinghouse Savannah River Co.,* 200 F.R.D. 539, 560 (D.S.C.2000) (rejecting plaintiffs' claim of commonality in part because "a host of relevant objective factors guide the decision-maker's decision").

The regulations governing the decisions of county committees set forth eleven eligibility criteria, at least eight of which (the first, second, sixth, seventh, eighth, ninth, tenth and eleventh) cannot be properly characterized as subjective. They are: 1) United States citizenship; 2) the legal capacity to incur loan obligations; 3) education and/or farming experience in managing or operating a farm or ranch; 4) character (emphasizing credit history, past record of debt repayment and reliability); 5) a commitment to carrying out undertakings and obligations; 6) inability to obtain credit elsewhere; 7) farm size (the farm to be no larger than a family farm); 8) and 9) loan history (restricting the permissible number of prior years in which the applicant executed a promissory note for a "direct OL loan"); 10) no previous debt forgiveness causing a loss to the Agency; and 11) no delinquency on any federal debt. *See* 7 C.F.R. § 1941.12(a) (operating loans)[4]; *see*

---

3. Both of these theories must be kept in mind when considering the class certification question, because " 'to answer the procedural questions [of Rule 23]…in effect requires answering the substantive question whether, under either of the available theories, there exists the requisite "pattern or practice" sufficiently and comparably affecting an identifiable class of protected employees.' " *See Wagner,* 836 F.2d at 587 n. 60 (quoting *Stastny v. S. Bell Tel. & Tel. Co.,* 628 F.2d 267, 274 (4th Cir.1980)).

4. The objectivity of these criteria is one of the factual distinctions between this case and the recently-decided case *McReynolds v. Sodexho Marriott Servs., Inc.,* 208 F.R.D. 428 (D.D.C. 2002). The Court in *McReynolds* certified a na-

tionwide class of African American employees who had made disparate impact and treatment claims in regard to Sodexho's employment practices, including a decentralized, subjective promotion process. *See McReynolds,* 208 F.R.D. at 440–41. In that case, however, the Court based its holding on the fact that the decision-making process in that case was *entirely* subjective, pursuant to the stated *Falcon* exception: *"Falcon's* footnote 15…carved out an exception…for 'entirely subjective *decisionmaking processes'*…what is significant [here] is that the determination of which criteria to use is left entirely to the individual manager." *Id.* at 442 (emphasis in original) (citation omitted). The presence of at least some mandatory objective criteria in the decision-making process take this case out of

*also* 7 C.F.R. § 1943.12(a) (farm ownership loans) [5].

The issue presented by this case was considered five years ago by Judge Thomas A. Flannery in *Williams v. Glickman*, Civ. No. 95–1149, 1997 WL 198110 (D.D.C. Apr. 15, 1997) (*Williams II*). In *Williams II*, Judge Flannery denied a motion for reconsideration of his previous denial of class certification to a group of African American and Hispanic farmers claiming discrimination arising out of the USDA loan application process. The *Williams* plaintiffs had based their suggestion of commonality on the allegation that county supervisors were subjectively applying the loan standards in a discriminatory fashion. *Williams II* at *2. After reviewing the same criteria involved in this case, Judge Flannery held that plaintiffs had not satisfied the commonality requirement:

> [Plaintiffs' assertion does] not constitute significant proof of an entirely subjective decision-making process[ ], as required by *Falcon.* The plaintiffs appear to be arguing that Local officials are ignoring applicable standards, not that such officials operate in a *system* without standards which allows them to make decisions subjectively. The plaintiffs, then, are not really describing "common practices" under *Falcon.*

*Id.* (emphasis in original) (footnote omitted).

Plaintiffs assert that this case is not like *Williams II*, because here they are indeed

the purview of the *Falcon* exception, and distinguish this case from *McReynolds*.

5. Citations are to the current provisions of the Code of Federal Regulations. The parties have not indicated that these provisions have materially changed over the relevant time period.

6. Plaintiffs blame their inability to present better statistical proof on defendant's databases, which do not contain specific reasons for the denials of loan and benefit applications made by Hispanic farmers. Plaintiffs cite cases such as *De Medina v. Reinhardt*, 686 F.2d 997 (D.C.Cir.1982), and *Segar v. Smith*, 738 F.2d 1249 (D.C.Cir.1984), for the basic proposition that they should be permitted to proceed with a "reduced level of proof [as] relevant qualification data are unavailable. . . ." *De Medina*, 686 F.2d at 1009, n. 7. *De Medina* and *Segar*, however, both dealt with attempts to make out *prima facie* cases of discrimination. Plaintiffs do not explain how such cases apply to a motion for class certification. Perhaps they are suggesting that, in the absence of better USDA data, their "across the board" showing

alleging that the system permits unfettered, highly subjective decision-making, and they assert that their statistics will demonstrate the discriminatory results of that system. Plaintiffs' expert, Dr. Jerry A. Hausman, offers the opinion that Hispanic farmers are less likely to receive loans than whites. *See* Hausman Declaration at ¶ 15. What Dr. Hausman's analysis does not show, or purport to show, however, is that this fact is attributable to any one, or more, of the arguably subjective criteria that are part of the loan approval process. A statistical analysis demonstrating that Hispanic farmers are disproportionately disqualified on grounds of "character" or "commitment," 7 C.F.R. § 1941.12(a), might well support a finding of commonality as to those criteria, which are indeed subjective. Dr. Hausman's analysis, however, fails to tie the statistical disparity he observes to any one or more subjective criterion and thus fails to establish that subjective decision-making is *common to the* proposed class. *See Webb*, 206 F.R.D. at 408 n. 2 (finding plaintiffs' proffered statistics neither instructive nor determinative when they did not account for non-discriminatory variables) [6]. Here, as in *Hartman*, "plaintiffs' statistics may have demonstrated that discrimination against. . .applicants. . .was afoot, [but] nothing in the record so far permits the additional inference that class mem-

ought to shift the burden of disproving commonality to defendant, requiring defendant to show that Hispanic farmers' applications were rejected for objective reasons, just as proof of a *prima facie* case shifts the burden of proof in a Title VII case. If that is the suggestion, it is unsupported by case authority and unpersuasive.

More troubling are plaintiffs' assertions that defendant has engaged in the destruction of relevant documents in violation of document retention regulations. This assertion is the stated reason for plaintiffs' very recent motion for an order requiring that defendant preserve all documents "conceivably relevant" to the litigation. *Plaintiffs urge that wrongful destruction would* warrant an adverse inference against defendant. It is not clear whether such an inference could be used to support a Rule 23(a) commonality finding—no precedent to that effect has been cited by plaintiffs, and we have found none—but the assertion of document destruction is unproven, and the question is thus premature.

bers suffered a *common* injury." 19 F.3d at 1472 (emphasis in original) [7].

Commonality is defeated—not only by plaintiffs' inability to correlate the discrimination they allege with subjective loan qualification criteria—but also by the large numbers and geographic dispersion of the decision-makers. *See Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 279 (4th Cir.1980) ("substantial degree of and perhaps almost complete local autonomy in separate facilities...cuts against any inference for class action commonality purposes that local facility practices were imposed or enforced state-wide with respect to a statewide class"); *Webb*, 206 F.R.D. at 406 (commonality and typicality lacking when plaintiffs' claim based on "individual decisions made by hundreds if not thousands of individual managers at all of these organizations"); *Carson v. Giant Food, Inc.*, 187 F.Supp.2d 462, 471 (D.Md.2002) ("[P]utative class members worked in at least thirteen different facilities, located at five different towns or cities. This geographical diversity itself would make class treatment inappropriate"); *Zachery v. Texaco Exploration and Prod., Inc.*, 185 F.R.D. 230, 239 (W.D.Tex.1999) ("In this case, the proposed class is spread across fifteen states in seventeen separate business units, each of which, until 1998, had varying degrees of autonomy over evaluation and promotion decisions...[d]elving into the practices of each local business unit and conceivably even into the individual decisions is precisely the type of individualized inquiry that class actions were designed to avoid").

The thousands of Hispanic farmers plaintiffs seek to represent have dealt with hundreds, if not thousands, of local FSA officials, in more that 2,700 county offices across the country, over a 19–year period. *See* Plaintiffs' Reply to Defendant's Opposition at 12. Those farmers' allegations of discrimination cannot be sorted out without individualized inquiries regarding the practices of the various county committees [8]. Plaintiffs' statistical analysis does not inform this issue, because it is not broken down by county, or even by state. Commonality has been found in a nationwide class with decentralized decision-making when "[p]laintiffs' statistical expert concluded that this pattern of discrimination was company-wide and *did not vary significantly by division*," *see McReynolds*, 208 F.R.D. at 441 (emphasis added), but here, plaintiffs have proffered only a national average of loan ratios. *See Stastny*, 628 F.2d at 279 (rejecting statistical evidence that showed only overall disparities instead of disparities by individual facility).

### Rule 23(b) Analysis

Under Rule 23(b), the question is whether the proposed class could be certified under Rule 23(b)(2), Rule 23(b)(3), or a hybrid of the two. The inquiry focuses on the relief plaintiffs seek.

### Rule 23(b)(2)

■ Rule 23(b)(2) is properly applied to cases that seek injunctive or declaratory relief and "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Fed. R.Civ.P. 23 Advisory Committee's Note

---

7. Plaintiffs' statistical problem is endemic to the entire class certification motion, but is particularly toxic to their claim of disparate impact: *"Especially in [disparate impact] cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests,* the plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (emphasis added) (*quoting Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (O'Connor, J., concurring)); *see Lu v. Woods*, 717 F.Supp. 886, 890 (D.D.C.1989).

8. The geographic dispersion of the decision-makers is especially damaging to the assertion of commonality with regard to plaintiffs' disparate treatment claim. A successful disparate treatment plaintiff must establish discriminatory intent on the part of the decisionmaker. That proof would have to be adduced on at least a county-by-county basis. *See, e.g., Brooks v. Circuit City Stores, Inc.*, Civ.A.No. DKC 95–3296, 1996 WL 406684 at *4–5 (D.Md. June 17, 1996); *cf. Cook v. Boorstin*, 763 F.2d 1462, 1472 (D.C.Cir.1985) (dictum) (Court suggested that disparate treatment plaintiffs may have met typicality requirement through use of affidavits and memoranda showing Library of Congress, as sole source of decision-making authority, engaged in discrimination through its subjective standards).

(1966). Courts have permitted (b)(2) classes to recover monetary relief in addition to declaratory or injunctive relief where the monetary relief does not predominate, *see Eubanks v. Billington,* 110 F.3d 87, 92 (D.C.Cir. 1997), but when, exactly, a claim for monetary relief comes to predominate over a claim for declaratory or injunctive relief has not been decided in this Circuit, nor is the caselaw uniform in other Circuits. In the Fifth, Eleventh and Seventh Circuits "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998) (internal citations omitted) (emphasis in original); *Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir.2001); *Jefferson v. Ingersoll Int'l Inc.,* 195 F.3d 894, 898 (7th Cir.1999). The Second Circuit's approach is more flexible and ad hoc. *See Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 164 (2d Cir.2001) (rejecting *Allison* "incidental" approach in favor of ad hoc balancing of the relative importance of the remedies sought).

One might expect the District of Columbia Circuit to find the Second Circuit's ad hoc balancing more persuasive than the Fifth Circuit's bright-line rule, *see Taylor v. D.C. Water & Sewer Auth.,* 205 F.R.D. 43, 50 (D.D.C.2002), but the outcome of that debate would not affect the instant case, because in this case the monetary relief plaintiffs seek predominates under any applicable test. Plaintiffs' Second Amended Complaint seeks damages of $20 billion, or $1 million per class member in an estimated class of 20,000 people. The only declaratory relief it seeks is an order declaring that plaintiffs and the Class members were denied equal credit and other farm program benefits and that plaintiffs have a right to full and timely enforcement of their civil rights discrimination complaints.2d Amended Complaint at ¶ 120. It seeks no injunctive relief at all [9]. Judge Flannery came to the same conclusion in *Williams v. Glickman (Williams I),* Civ. No. 95–1149, Memorandum Opinion, 1997 WL 74547 (D.D.C. February 14, 1997), a suit very much like this one that he found to be "essentially a suit to recover damages, not to obtain injunctive relief." *Williams I,* Memorandum Opinion at 19.

*Rule 23(b)(3)*

Rule 23(b)(3)'s predominance criterion is far more demanding than the commonality requirement of Rule 23(a). *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Numerous cases have held that decentralized, locally autonomous subjective decision-making practices present predominately *individual,* not *common,* issues in discrimination cases. In *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999 (11th Cir. 1997), for example, a proposed nationwide class of Motel 6 employees could not sustain a class action suit alleging racial discrimination because the widely-dispersed class did not satisfy Rule 23(b)'s predominance requirement:

> The *Jackson* plaintiffs' claims will require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination....Furthermore, even factual issues that are common to many of the *Jackson* plaintiffs...will require highly case-specific determinations at trial. These issues are clearly predominant over the only issue arguably common to the class—whether Motel 6 has a practice or policy of racial discrimination.

---

9. If plaintiffs' complaint-processing claim were still in the case, their prayer for "specific performance with respect to their program benefits" (under a claim of violation of the Administrative Procedure Act), 2d Amended Complaint ¶ 129, might support the provisional certification of a Rule 23(b)(2) class. The fate of such a certification is at least uncertain after *In re Veneman,* 309 F.3d 789, 790–92 however, and it is also worth noting that the class ultimately certified in *Pig-* ford for purposes of the settlement consent decree was a Rule 23(b)(3) class. *See Pigford v. Glickman,* 185 F.R.D. 82, 94 (D.D.C.1999) ("The parties in this case agreed that it was more appropriate—and fairer to the members of the class—to ask the Court to certify the class under Rule 23(b)(3) for all purposes, particularly since the proposed settlement involves primarily monetary relief"), *aff'd* 206 F.3d 1212 (D.C.Cir.2000).

*Jackson,* 130 F.3d at 1006. Similar results, on similar reasoning, were reached in *Carson,* 187 F.Supp.2d at 471–72 (highly individual nature of discrimination claims concerning subjective decision-making at various facilities precluded fulfillment of predominance requirement); *Reid v. Lockheed Martin Aeronautics Co.,* 205 F.R.D. 655, 684 (N.D.Ga.2001) (discrimination suit challenging subjective practices in several facilities could not meet predominance requirement because court would focus on individual circumstance of each member of plaintiff class); *Ramirez v. DeCoster,* 194 F.R.D. 348, 353 (D.Me.2000) ("Because each worker's exposure to this subjective decision-making...will vary in nature and degree, any trial on 'class' issues will quickly erode into a series of individual trials focused on issues specific to each worker"); *Riley v. Compucom Sys., Inc.,* No. 398CV1876L, 2000 WL 343189 at * 6 (N.D.Tex. March 31, 2000) (discrimination claims of geographically dispersed class regarding subjective decision-making process did not pass predominance requirement because they "fail[ed] to appreciate the overwhelming number of individual-specific issues") (internal quotation omitted); *Brooks v. Circuit City Stores,* No. 95–3296, 1996 WL 406684 at *6 (D.Md. June 17, 1996) (common questions did not predominate when discrimination claims centered on subjective decision-making of management at different store locations); *Celestine v. Citgo Petroleum Corp.,* 165 F.R.D. 463, 470 (W.D.La.1995) (although attack on defendant's subjective decision-making policies survived 23(a) commonality test, case presented need for individualized evidence regarding each plaintiff's discrimination allegations, so individual questions predominated).

The instant case, if allowed to proceed as a class action, would quickly devolve into hundreds or perhaps thousands of individual inquiries about each claimant's particular circumstances. No individual plaintiff could prevail without scrutiny of his or her individual loan application to determine whether the application was "feasible" in terms of such objective criteria as an applicant's financial qualifications and repayment ability.

*Williams I,* Memorandum Opinion at 20. Even if the presence of classwide discrimination were established, individual issues would be much more important to any claimant's recovery.

Another Rule 23(b)(3) criterion, that a class action is superior to other methods of adjudication, does favor the plaintiffs, if it is permissible as part of the class certification process to consider (a) the increased likelihood of settlement after class certification, and (b) the accelerated pace of individual determinations that can be expected in a class settlement. The *Pigford* case, frustrating as it has been to the parties in some respects, has successfully resolved thousands of individual cases with streamlined awards of $50,000 or with *Teamster*-type hearings. *See Pigford v. Veneman,* 292 F.3d 918, 920 (D.C.Cir.2002); *Pigford v. Veneman: Consent Decree in Class Action Suit by African American Farmers, Background and Current Status, at http://www.usda.gov/da/consentsum.htm.* It seems unlikely that USDA would have proceeded nearly as quickly on individual Black farmer cases were it not for the class action settlement. A class action may indeed be superior to other methods of adjudicating the claims of Hispanic farmers. Without predominant of common questions of law or fact, however, that superiority is not enough to sustain class certification.

*Hybrid Certification*

 Plaintiffs urge consideration of a hybrid class like that authorized by *Eubanks, supra.* Such a class would be certified under Rule 23(b)(2) for purposes of injunctive and declaratory relief, and under Rule 23(b)(3) for monetary damages. *See* Supplemental Memorandum at 39–40. There are a two impediments to this request. First, it is out of the question that this class could be certified under Rule 23(b)(3), because of the predominance issues discussed above, so the proposed class would not really be a hybrid, but rather a Rule 23(b)(2) class with a different name. *See Jefferson,* 195 F.3d at 899 (hybrid class certification appropriate only "assuming that certification under Rule 23(b)(3) otherwise is sound") (dictum); *Cooper v. Southern Co.,* 205 F.R.D. 596, 631 (N.D.Ga.2001) (hybrid certification unavail-

able when "common elements of proof would not predominate in any event so as to meet the requirements of (b)(3)"); *Lott,* 200 F.R.D. at 563 (hybrid certification inappropriate because 23(b)(3) could not be satisfied, and hybrid certification "requires satisfaction of both the (b)(2) and (b)(3) requirements").

Second, it is not at all certain that this class could be certified under Rule 23(b)(2), even temporarily. *See In re Veneman,* 309 F.3d 789, 790–92. Rule 23(b)(2) demands a showing that a defendant has acted or refused to acts in ways generally applicable to the entire class. Here, the decentralization of loan and other benefits decision could negate such a finding of general applicability. *See Webb,* 206 F.R.D. at 409 ("Here, there are just too many individual issues which prevent this action from being certified under Rule 23(b)(2). The fact finder would have to review literally thousands of individual decisions made by hundreds of individual managers...at six different facilities"); *Riley,* 2000 WL 343189 at *3.

An appropriate order accompanies this memorandum.

## ORDER

For the reasons set forth in the accompanying memorandum, plaintiffs' motion for class certification [18] is **denied**.

A status conference is set for December 18, 2002, at 10 A.M.