David CANTU, et al., Appellants

v.

UNITED STATES of America, et al., Appellees.

No. 13–5044.

United States Court of Appeals, District of Columbia Circuit.

May 27, 2014.

Laura G. Ferguson, Richard Anthony Hibey, Miller & Chevalier Chartered, Washington, DC, Robert F. Ruyak, Winston & Strawn LLP, Washington, DC, for Appellants.

Charles Wylie Scarborough, U.S. Department of Justice, Washington, DC, DOJ Appellate Counsel, Stuart F. Delery, Marleigh D. Dover, Ronald C. Machen, Jr., Esquire, U.S. Attorney's Office, Washington, DC, for Appellees.

Before: TATEL, GRIFFITH and PILLARD, Circuit Judges.

## JUDGMENT

This appeal was considered on the record and on the briefs and oral argument of the parties. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the judgment of dismissal be reversed and the case remanded to the district court.

Between 1997 and 2000, African–American, Native American, Hispanic, and female farmers filed four virtually identical class action lawsuits alleging that the U.S. Department of Agriculture (USDA) routinely discriminated on the basis of race, ethnicity, and gender in the administration of farm benefit programs and failed to investigate the claims of farmers who filed complaints with the USDA based on such conduct. The lawsuits followed an internal investigation by USDA that concluded that the agency had engaged in decades of discrimination and had failed to handle complaints of such discrimination appropriately. The agency's misconduct, the investigation found, caused minority and female farmers to lose "significant amounts of land and potential farm income."

Three African–American farmers filed the first class action, *Pigford v. Glickman* (*Pigford I*), in August 1997. After the plaintiffs obtained class certification over the government's opposition, *see Pigford v. Glickman*, 182 F.R.D. 341, 342 (D.D.C. 1998), the government agreed to settle *Pigford I* by consent decree, *see Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C.1999), *aff'd*, 206 F.3d 1212 (D.C.Cir.2000). The decree established a two-track dispute resolution system. A less demanding track, known as "Track A," provided a "virtually automatic" payment of $50,000, plus taxes owed on the award and loan forgiveness, for farmers who provided "substantial evidence" of discrimination. *Pigford*, 185 F.R.D. at 95–96. A more demanding track, "Track B," offered claimants uncapped damages if they could demonstrate discrimination by a preponderance of the evidence. *Id.* at 97. Track B claimants could be represented by class counsel for free. *Id.* As of January 31, 2011, approximately $1 billion had been disbursed to nearly 16,000 African–American farmers under the *Pigford I* consent decree. The government has also provided $1.25 billion to settle claims of African–American farmers who missed the *Pigford I* filing deadline. Those claims, collectively known as *Pigford II*, are also subject to a two-tier resolution process, with settlement payments capped under Track A and Track B at $50,000 and $250,000, respectively.

Native American farmers filed a lawsuit virtually identically to *Pigford I* in 1999, and they too obtained class certification over the government's opposition. *See Keepseagle v. Veneman*, No. 99–03119, 2001 WL 34676944, at *1 (D.D.C. Dec. 12, 2001). The government settled *Keepseagle* in 2010, establishing a claims resolution process nearly identical to that in *Pigford II* to distribute approximately $680 million in damages and $80 million in debt forgiveness. *See* Statement by the President on Settlement Agreement in the Native American Farmers Lawsuit Against USDA (Oct. 19, 2010), http://www.whitehouse.gov/the-press-office/2010/10/19/statement-president-settlement-agreement-native-american-farmers-lawsuit.

In 2000, Hispanic and female farmers filed the last two of the four lawsuits. They too sought class certification but were unsuccessful. *See Garcia v. Johanns*, 444 F.3d 625 (D.C.Cir.2006) (Hispanic farmers); *Love v. Johanns*, 439 F.3d 723 (D.C.Cir.2006) (female farmers). Nevertheless, in January 2012 the govern-

ment unveiled an administrative claims resolution process titled the "Framework for Hispanic or Female Farmers' Claims Process" (the Framework). Despite resembling the *Pigford* and *Keepseagle* processes in broad strokes, the Framework differed in several respects, including the absence of judicial supervision or class counsel, less monetary relief, a more onerous burden of proof, and relief for a more limited category of claims.

Appellants are Hispanic farmers who, on behalf of a putative class, allege that the government's provision of a claims resolution process inferior to those in *Pigford* and *Keepseagle* is unconstitutionally discriminatory. Appellants seek a declaration that the Framework violates both the Fifth Amendment and the Administrative Procedure Act, 5 U.S.C. § 706, and an injunction prohibiting the government from engaging in racial discrimination against them and ordering the government to provide them with a class settlement equivalent to those that African–American and Native American farmers received.

The district court dismissed appellants' complaint for lack of subject matter jurisdiction, concluding that appellants had failed to establish standing because the sought-after relief would not redress their injuries. *See Cantu v. United States,* 908 F.Supp.2d 146 (D.D.C.2012). The court explained that it lacked authority to grant injunctive relief because it could not require the government to settle the claims in *Garcia. See id.* at 151–52. It also held that declaratory relief would not provide redress because it could not ultimately serve as a basis for invalidating the *Pigford* or *Keepseagle* settlements or for extending the terms of those settlements to appellants. *See id.* at 152.

Appellants appeal the dismissal of their suit. We have jurisdiction under 28 U.S.C. § 1291 and review the district court's dis-

missal for lack of subject matter jurisdiction de novo. *See Info. Handling Servs., Inc. v. Def. Automated Printing Servs.,* 338 F.3d 1024, 1029 (D.C.Cir.2003). In determining whether appellants have standing, we assume that their legal claims are valid and accept the factual allegations in their complaint as true. *See id.*

As an initial matter, we agree with the district court that appellants' prayer for relief overreaches. It is well established that a court cannot order a party to settle, *see Gevas v. Ghosh,* 566 F.3d 717, 719 (7th Cir.2009) ("A judge may not coerce a party into settling."); *In re NLO, Inc.,* 5 F.3d 154, 157 (6th Cir.1993); *Kothe v. Smith,* 771 F.2d 667, 669 (2d Cir.1985) (citing *MacLeod v. D.C. Transit Sys., Inc.,* 283 F.2d 194, 195 n. 1 (D.C.Cir.1960)), particularly where the party is an Executive Branch agency, *see United States v. La-Croix,* 166 F.3d 921, 923 (7th Cir.1999). The district court was therefore correct in holding that it lacked authority to enjoin the government to provide appellants with a class settlement identical to those in *Pigford II* and *Keepseagle.*

Were appellants seeking only such an injunction, dismissal of their suit might well have been proper. But they are not. At bottom, they seek a declaration and injunction prohibiting the government from offering them a claims process tainted by racial considerations. If the government has indeed done that—and, for purposes of this appeal, we must assume it has—the district court could have granted relief by ordering the government not to act toward appellants based on unlawful racial grounds. Such an order would not, in practice, require the government to settle or dictate settlement terms. Rather, it would simply require the government to make litigation decisions based only on permissible factors, *i.e.,* not race. Such relief, which is surely within the judicial power, would redress appellants' alleged

injuries. *See Swan v. Clinton,* 100 F.3d 973, 976 (D.C.Cir.1996) (suggesting that the redressability prong of standing turns on "whether a federal court has the power to grant" the relief a party seeks); *cf. Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

Because we conclude that appellants' claims were redressable, we reverse the judgment of the district court. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.